## PETER HIGH *vs.* HAWAIIAN GOVERNMENT.

EXCEPTIONS.

HEARING, NOVEMBER 25, 1892.   DECISION, DECEMBER 24, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

Actions for tort may be brought against the Hawaiian Government under the provisions of Chapter 51, Laws of 1888.

The Road Supervisor for the District of Honolulu, under Chapter 9 of the Laws of 1887, was an officer and agent of the Government, which was liable for the acts of such officer done in the scope of his authority.

The Government, by its agents, turned storm water, which had collected on a street, into private property, by cutting trenches through the sidewalk, and then shut off the egress of such water from the private property by filling in the channel by which such water might escape :

Held, that the Government was liable for the damages that resulted to the proprietor.

OPINION OF THE COURT, BY DOLE, J.

The plaintiff claimed of the defendant $352.40 for damages to his planing mill on the easterly side of Alakea street, in Honolulu, in that the defendant failed to provide sufficient drainage for the surface water of the said street, and unlawfully and wrongfully cut trenches across the sidewalks of said street, whereby large quantities of surface water were caused and suffered to flow from said street to and upon the plaintiff's premises, causing great injury to the belting, pulleys and machinery of said mill, and putting him to great expense in pumping the said water therefrom, and causing him to lose much time in the carrying on of his business.

The defendant demurred to the declaration, and for cause of demurrer said that the "complaint does not state facts suffi-

cient to constitute a cause of action." The demurrer was over-ruled, and no appeal taken.

At the trial of the case on the merits, the defendant's counsel, at the close of the evidence for the plaintiff, moved the Court to instruct the jury to find a verdict for the defendant, on the ground that no liability had been shown on the part of the defendant, which motion was overruled and exception noted.

The defendant asked the Court to give certain instructions to the jury, which the Court refused, deeming the charge already given to be sufficient. No exception was made to this by the defendant. The charge, as given, substantially covered that portion of the instructions requested by the defendant, which it was entitled to have to go to the jury.

The verdict was for the plaintiff, which was excepted to by defendant, and its motion for a new trial was thereafter over-ruled by the Presiding Judge, from which decision exceptions were taken to this Court. The grounds of the motion for a new trial were these:

1. Errors of law occuring at the trial and duly excepted to by defendant.

2. That the verdict is contrary to the law and evidence.

3. The verdict is against the weight of evidence.

At the argument before the Full Court, the point was raised in behalf of the defendant, that the Government is not liable for torts. As this contention had not been made before in the course of the proceedings, we have had some doubt whether it can be made now. But no objection having been taken against its consideration by the plaintiff's counsel, we have concluded to admit it under the general exceptions to the refusal of the Court to grant the motion for non-suit, which was based on the ground that no liability of defendant had been shown, and upon the second exception to the refusal of the Court to allow the motion for a new trial, *i.e.*, that the verdict was contrary to the law and the evidence.

It is admitted that the Government, as such, cannot be sued by private parties without its consent; and the question upon this point is merely whether the consent given by Chapter 51

of the Laws of 1888 includes claims arising from torts, as well
as contracts, or is limited to contracts.

The second section of said Chapter is as follows :   " Whenever
any citizen of this Kingdom, or other person, shall have a claim
or claims against the Hawaiian Government which said govern-
ment shall refuse or neglect to satisfy or adjust, it shall be com-
petent for such person to bring and maintain a suit or suits
against said government in any appropriate court of record of the
Kingdom for the purpose of adjudicating such claim or claims."

The defendant's counsel contend that these words only author-
ize suits against the government based on contracts, and al-
though the word " claim " in the statute is of general significance,
it is argued on behalf of the defendant that its meaning is con-
trolled by Section 1 of the same Act, which provides for bring-
ing suits by the Hawaiian Government, "in order to collect or
recover any money or penalty, or to recover or obtain the pos-
session of any specific property, real or personal, or to enforce
any other right, except in respect to criminal prosecutions."

We do not see any necessary connection between these two
sections of the law ; they might as well, and perhaps better, have
been placed in different Acts.   If the contention of the defend-
ant's counsel is correct—that the word " claim " in Section 2 is
explained by the more explicit statement of causes of action in
Section 1—it would not thereby appear that actions of tort were
excluded, as the right of action " to collect or recover any
money "'   *   *   *   *   " or to enforce any other right " might
well be held to include actions of tort for damages.

But we take the ground that the word " claim " is not only
one of a very broad meaning, but there is nothing in the statute
to show that it is not intended to be used in its broadest sense.
Nor is there anything to suggest that the Legislature meant to
confine its application to causes of action arising from contracts;
on the contrary, the words in the next section—" any contract
or any act of any government officer "—referring to allowance
of process by the Justices of the Supreme Court, are strong evi-
dence of the definite intention of the Legislature to include
claims arising from torts, as well as contracts, among the
causes of action that may be brought against the government.

Lord Coke said "that the word demand is the largest word in law, except claim." 8 Bac. Abr., 283. We are already accustomed to the use of the word *claim* as a verb in our statute in actions of tort. Civil Code, Sec. 1116.

The Act of Congress of March 3d, 1887, defining the jurisdiction of the United States Court of Claims, definitely excluded actions founded in tort in the following words: "All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort," etc. Notes, Rev. Stat. U. S., 354. If such actions had not been thus specifically excluded, they would have been included by the general words.

We find that a right of action against the Government for tort is given by the Statute of 1888 referred to. It is interesting to note in this connection that no other sovereign state has ever held itself liable to individuals for the misfeasance, laches or unauthorized exercise of power by its officers and agents. Miller, J., in *Gibbons vs. United States*, 8 Wall., 269.

The defendant made the further point in the argument that the Government is not responsible for the acts of the Road Supervisor, or those which may be done under his authority, on the ground that he is not an agent of the Government.

We know of no basis for such a contention. At the time the alleged damages happened, the streets of Honolulu were under the charge of a Road Supervisor, subject to the direction and control of the Minister of the Interior, who had the power of his appointment and removal. Laws of 1887, Chap. 9, Sec. 12. The circumstance that the appointment is by the Minister does not make the Supervisor his private servant or agent, he being required by law to make the appointment. "The state holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it." *Transp. Co. vs. Chicago*, 99 U. S., 641. The Road Supervisor under the Act of

1887 was distinctly a state officer and agent, and the State is responsible for those of his acts which are done in the scope of his authority.

The defendant further contends that even if it is conceded that the government is liable generally for the acts of its agents, and that the Road Supervisor was its agent, it is not liable under the evidence in this case, in that it is not liable for a mistake of judgment of its agents whereby injury is caused, or for injuries from storm water caused by a change of grade of streets, or for not providing sufficient drains for carrying off exceptional quantities of storm water.

It appears from the evidence that a part of the belting and machinery of the plaintiff's planing mill was below the floor in a kind of basement or cellar which was lower than Alakea street at that place; makai of plaintiff's lot and adjoining it was an area which was also lower than the street, and which was continuous with the low part of his lot. The sidewalk had the effect of a dam to prevent storm water from flowing from the street to these lower places. During a storm by which the street was flooded, the defendant's agents cut trenches through the sidewalk so that the water escaped into the low land adjoining plaintiff's lot, and thence to his lot and out again through a continuation of the low land toward the sea, without injury to the plaintiff. In the meantime the defendant was filling in this channel of escape of water, and after this storm continued the work in spite of the plaintiff's protests, until all chance of any water escaping from his premises was destroyed. After this, new storms occurred and quantities of storm water flowed from Alakea street through the aforesaid trenches into the low land adjoining plaintiff's premises, thence into the low part of his premises, whence the escape of the water being shut off by the defendant's operations of filling in the channel to the sea, the water rose until it reached the plaintiff's machinery and belting and caused the injury complained of. The grade of Alakea street contiguous to plaintiff's premises had been lately established by the defendant at such a pitch that it was expected that the street would be kept clear of storm water by surface drainage, and

drain the whole area bounded by Beretania, Richard, Queen and Fort streets.

Although the government, in its necessary work of laying out and grading streets, is not bound in all cases to protect adjacent land holders from the inevitable consequences of such changes, yet it may not collect the surface water from its lands and streets and discharge it upon the land of another. (2 Dill. Mun. Cor. sec. 1042, n. 1 and cases cited.) If the defendant, by the introduction of a new system of grading, has caused a greater area to be drained by Alakea street than formerly, and a larger quantity of water in consequence to be delivered into that street, it must provide an escape for such excess. (*Ib.* sec. 1041, n. 2 and cases cited.)

It appears, however, by the evidence that the water collected on Alakea street would not have flowed into plaintiff's premises if the trenches had not been cut across the sidewalk by the defendant's agent. According to some of the authorities the defendant would have been liable if the excess of water collected in consequence of the new grades had flowed into the plaintiff's premises over the sidewalk and no trenches had been cut through it. But the act of the defendant's agents, in cutting these trenches by which the water was caused to flow into the plaintiff's premises, was a direct invasion of his property without legal authority. To this the plaintiff submitted, so long as the water escaped from his place toward the sea without injuring him. The defendant was bound, having adopted the channel through the plaintiff's premises as a drain to carry off the surface water from the street, to keep such drain open to the sea. But by filling in across this channel below plaintiff's premises the defendant obstructed it, so that when the next storm came the water was dammed up and caused to rise and flood the plaintiff's works, doing the damage alleged. The defendant is clearly responsible for all damages resulting under the circumstances.

The exceptions are overruled.

*W. F. Frear*, for plaintiff.

*Attorney-General Brown* and *C. Creighton*, for defendant.